# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1599

CHERMANE SMITH, EDMANUEL PEREZ,
TYHESHA BRUNSTON, MICHELLE WALDO,
KIRK YUNKER, and TONY WILLIAMS,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHICAGO, PHILIP CLINE, Superintendent,
Chicago Police Department, and RICHARD A. DEVINE,
Cook County State's Attorney,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 6423—**Elaine E. Bucklo,** *Judge.*

_____

ARGUED JANUARY 11, 2008—DECIDED MAY 2, 2008

_____

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* The Chicago Police Department, acting under the Illinois Drug Asset Forfeiture Procedure Act (DAFPA), 725 ILCS 150/1 *et seq.* (2004), seized property belonging to the plaintiffs. In response, the plaintiffs filed this case, under 42 U.S.C. § 1983, claiming that when property is seized under the Act, due process requires that

they be given a prompt, postseizure, probable cause hearing, even though the DAFPA does not require any such hearing.

In the district court, the plaintiffs conceded, based on our decision in *Jones v. Takaki*, 38 F.3d 321 (7th Cir. 1994), that their complaint should be dismissed. It was. And they are now here asking us to reexamine *Jones* in light of *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), two cases that predate *Jones* but were not cited in that opinion.[1]

DAFPA permits the seizure of vehicles, aircraft, and vessels along with money involved in certain drug crimes. The property may be seized by a law enforcement officer without a warrant where there is probable cause to believe it was involved in a drug crime and is, accordingly, subject to forfeiture. When property is seized, forfeiture proceedings must be instituted. As relevant here, the law enforcement agency that seizes the property—in this case, the Chicago police department—must, within 52 days, notify the state's attorney of the seizure and the circumstances giving rise to the seizure. Once the state's attorney receives notice of the seizure, she must do one of two things, depending on the value of the property seized. If it is worth more than $20,000, she must file judicial in rem forfeiture proceedings within 45 days. If the nonreal property is worth less than $20,000, she must notify the owner, within 45 days, regarding a possible forfeiture. The owner then has 45 days in which to file a

---

[1] Interestingly, Attorney Thomas Peters of Chicago argued this case before us in January, as well as *Jones*, before a different panel, almost 14 years ago.

verified claim to the property with the state's attorney. If a claim is filed and bond is posted, the state's attorney must file judicial-in-rem forfeiture proceedings within 45 days. Thus, under this statutory scheme, for property worth more than $20,000, 97 days can elapse between the seizure of the property and the filing of judicial forfeiture proceedings. For property worth less than $20,000, it could be a maximum of 187 days—though we note that the claimant, by acting swiftly to file a claim, can reduce that time to 142 days. The claim here, as it was in *Jones*, is that because so much time can elapse before forfeiture proceedings are started, it violates due process not to have a postseizure/preforfeiture hearing of some type.

We seemed to reject the claim in *Jones*. But our present reexamination of the issue convinces us that the answer is not so clear. In *Jones*, our focus was on the issue of class certification. We determined that under *United States v. $8,850*, 461 U.S. 555 (1983), and *Barker v. Wingo*, 407 U.S. 514 (1972), the plaintiffs' claims were not typical of the claims of the class, and class certification was improper. Because the plaintiffs had conceded that, if we used the *Barker* analysis, summary judgment was properly granted to the defendants, we gave only slight consideration to the merits of the claim and affirmed the judgment for the city. Here, once again, the plaintiffs argue that *Good* and *Krimstock v. Kelly*, 306 F.3d 40 (2nd Cir. 2002), establish that the proper due process analysis for their claim is set out in *Mathews*, rather than in *Barker*. Their argument is persuasive and prompts us to take another run at the issue.

It has long been understood that forfeiture of personal property, which is easily capable of being moved or concealed, involves different concerns from the forfeiture of real property and does not require a preseizure hearing.

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). A postseizure hearing is, however, required. The question is the timing of that hearing. In *$8,850*, 461 U.S. at 562-63, the Court framed the issue as "when a postseizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." The Court determined in that circumstance the appropriate analysis was that in *Barker*, a case involving a defendant's right to a speedy trial, once proceedings have begun against him:

> The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time.

At 564. The *Barker* test requires consideration of the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. A few years later, relying on *$8,850*, the Court used the *Barker* test to evaluate administrative proceedings following the seizure by custom agents of a new Jaguar Panther automobile that was not properly declared at the Canadian border (it was purchased in Switzerland, shipped to Vancouver, and stopped at a U.S. border checkpoint in Blaine, Washington). *United States v. Von Neumann*, 474 U.S. 242 (1986).

As we shall see, there are significant reasons to doubt whether these cases should be controlling in the situation before us. To explain why, we start with *Good*, even though that decision involves real, not personal property. Drugs and drug paraphernalia were found in defendant Good's Hawaii home. The federal government sought civil forfeiture of the house and the land on the basis that the property had been used in connection with a drug

offense. One issue before the Court was whether in the absence of exigent circumstances, the Due Process Clause prohibits the seizure of real property without a prior adversarial hearing. The answer was that a preseizure hearing is required. The Court looked to the *Mathews* factors: the "private interest affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards; and the Government's interest, including the administrative burden that additional procedural requirements would impose." 510 U.S. at 53.[2]

Relying in part on *Good*, the Court of Appeals for the Second Circuit in *Krimstock* applied the *Mathews* factors to the seizure of automobiles under New York City's Administrative Code, concluding that a prompt postseizure retention hearing, with adequate notice, is required for motor vehicle seizures. In other words, after the seizure and before the actual forfeiture proceeding, a hearing

---

[2] *Mathews* itself, of course, involved the termination of Social Security disability benefit payments, but the use of its analysis is pervasive. It has been used in everything from the analysis of prison transfers (*Wilkenson v. Austin*, 545 U.S. 209 (2005)), to the evaluation of police department procedures for verifying that the right person was in custody (*Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006)), to a company's claim that its rights were violated by a delay in notice that it might be liable to a worker under the Black Lung Benefits Act (*Roberts & Schaefer Co. v. Director, Office of Workers' Compensation Programs*, 400 F.3d 992 (7th Cir. 2005)). We even mentioned *Mathews*—though we did not need to reach the issue—in a case involving the seizure of a dog (*Wall v. City of Brookfield*, 406 F.3d 458 (7th Cir. 2005)).

must be held to test whether the vehicle can be held. As a basis for its conclusion, the court cited a number of salient factors, including the possibility that there may be an innocent owner of the seized automobile. The importance of an automobile as a mode of transportation and, for some people, a means to earn a living was another important factor in assessing the private interest. Others were the availability of hardship relief and the length of the deprivation. In addition, even if an individual ultimately prevails, an automobile continues to depreciate during the time it is retained. In contrast, the court found that the governmental interest could be adequately protected by a bond or a restraining order to prevent the sale or destruction of the automobile. In short,

> [P]romptly after their vehicles are seized . . . as alleged instrumentalities of crime, plaintiffs must be given an opportunity to test the probable validity of the City's deprivation of the vehicles *pendente lite*, including probable cause for the initial warrantless seizure.

The *Krimstock* court properly, we think, distinguished *Von Neumann* and *$8,850*. *$8,850* concerns the speed with which the civil forfeiture proceeding itself is begun—a different question from whether there should be some mechanism to promptly test the validity of the seizure. At first glance, *Von Neumann* seems on point, but there are significant differences between that case and ours. *Von Neumann* involved proceedings for remission or mitigation under U.S. customs laws, not forfeiture under state law. More importantly, the customs laws allowed procedures for Von Neumann to obtain a speedy release of his automobile prior to the actual forfeiture hearing. For one thing, he could file a motion under Federal Rule of

Criminal Procedure 41(e) for the return of his vehicle. He had, in effect, relief similar to that which the plaintiffs in this case seek. In fact, Von Neumann's vehicle was released in 2 weeks after he posted bond. Furthermore, the entire delay about which the parties were in dispute was a mere 36 days. In significant ways, the case bears little resemblance to *Krimstock* or to our case.

The one thing that becomes clear is that, like many other due process issues, the answer as to whether a prompt hearing is required grows out of the situation. Our reconsideration of the issue leads us to find that the procedures set out in DAFPA show insufficient concern for the due process right of the plaintiffs.

All in all, we agree with *Krimstock*. The private interest involved, particularly in the seizure of an automobile, is great. Our society is, for good or not, highly dependent on the automobile. The hardship posed by the loss of one's means of transportation, even in a city like Chicago, with a well-developed mass transportation system, is hard to calculate. It can result in missed doctor's appointments, missed school, and perhaps most significant of all, loss of employment. This is bad enough for an owner of an automobile, who is herself accused of a crime giving rise to the seizure. But consider the owner of an automobile which is seized because the driver—not the owner—is the one accused and whose actions cause the seizure. The innocent owner can be without his car for months or years without a means to contest the seizure or even to post a bond to obtain its release. It is hard to see any reason why an automobile, not needed as evidence, should not be released with a bond or an order forbidding its disposal. The person from whom cash is seized also has a strong interest in a hearing, though obviously the posting of a cash bond for cash is an absurdity.

On the other hand, we recognize the City's interest in being certain that a vehicle is not destroyed before a court can issue a judgment in the forfeiture proceedings. We also understand that the preforfeiture hearing would impose some administrative burden on the City. However, due process always imposes some burden on a governing entity. We are not contemplating protracted proceedings, but rather notice to the owner of the property and a chance, perhaps rather informal, to show that the property should be released.

As an aside, we note that some states have procedures which provide an early opportunity to challenge the retention of seized property. The *Krimstock* court cited a Florida statute, which provides that seizing agencies must make a diligent effort to notify the owner. Notice must be mailed within 5 working days after the seizure and must state that an adversarial preliminary hearing may be requested within 15 days of receipt of the notice. The hearing must be held within 10 days after the request is received. Fla. Stat. 932.703(2)(a). Arizona provides for an order to show cause hearing if an application is filed by an owner or interest holder in the property. The owner must file the application within 15 days of notice of the seizure. A.R.S. s. 13-4310. Although not providing for a preforfeiture hearing, even the ordinance in *Krimstock* provided for more expeditious handling of forfeiture proceedings than does the DAFPA.

In short, our fresh look at this issue causes us to conclude that given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure under the DAFPA, some sort of mechanism to test the validity of the retention of the property is required. The judgment dismissing the

complaint, therefore, must be reversed. The district court, with the help of the parties, should fashion appropriate procedural relief consistent with this opinion. The hearing should be prompt but need not be formal. We leave it to the district court to determine the notice requirement and what a claimant must do to activate the process. We do not envision lengthy evidentiary battles which would duplicate the final forfeiture hearing. The point is to protect the rights of both an innocent owner and anyone else who has been deprived of property and, in the case of an automobile or personal property other than cash, to see whether a bond or an order can be fashioned to allow the legitimate use of the property while the forfeiture proceeding is pending.

One other matter requires mention. The City of Chicago and the police superintendent argue that the complaint should be dismissed against them pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). We reject the argument at this time. Plaintiffs' complaint contains allegations which, if true, would survive *Monell*. They are that actions were taken in accordance with City policies and procedures.

Because our opinion signals a reversal of course from *Jones*, we have circulated it under Circuit Rule 40(e) to all judges of the court in regular active service (Judge Rovner, however, did not participate in this case) and no judge voted to rehear the matter en banc.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.